UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17bk18368 |
| | ) | |
| Talecia Gilliam, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The matter arises out of numerous applications for compensation in chapter 13 cases brought by The Semrad Law Firm, LLC ("Semrad"). In the above-captioned chapter 13 case, the application is the Attorney's Application for Chapter 13 Compensation Under the Court-Approved Retention Agreement [Dkt. No. 15]. As explained below, for the purposes of this determination, the court renders this Memorandum Decision in the above-captioned case only. All related applications for compensation set forth on Exhibit A hereto (together with the application in this case, the "Applications") will receive minute orders based on and referencing this Memorandum Decision.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c); *Wellness Int'l Network, Ltd. v. Sharif*, — U.S. —, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough"). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and

conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Matters involving the compensation of a debtor's attorney concern the administration of the estate and are, thus, within the court's core jurisdiction. 28 U.S.C. § 157(a). Requests for compensation under section 330 of the Bankruptcy Code arise in title 11 and are also within the court's core jurisdiction. *In re Brent*, 458 B.R. 444, 449 (Bankr. N.D. Ill. 2011) (Goldgar, J.). Further, all parties have consented to this court's entry of a final order adjudicating the Applications.

Accordingly, determination of the Applications is within the scope of the court's jurisdiction and constitutional authority.

## DISCUSSION

The matter before the court arises out of a request for compensation in a chapter 13 case. Here, the chapter 13 trustee (the "Chapter 13 Trustee") objects to counsel's application for compensation. The dispute has its nexus in a practice that debtor attorneys have recently begun to employ in chapter 13 consumer cases in this District. The practice involves modifying the local form chapter 13 plan (the "Model Plan")[1] to change the priority of payments to creditors set forth therein.

This was done initially via a clear modification of the priority payment structure in chapter 13 cases. For example, in the case at bar, the debtor, Talecia Gilliam (the "Debtor"), presented a chapter 13 plan dated June 20, 2017 [Dkt. No. 9] (the "Plan") wherein the following language was added: "The allowed priority fees of Debtor's attorney shall be paid at the same priority level as payments provided for under Section E(2) of the plan." Plan, at ¶ G(1).

In some instances, once the Chapter 13 Trustee voiced a concern regarding the priority modification, counsel filed a modified plan, such as was done in the above-captioned case. Here, Semrad filed a modified plan for the Debtor, *see* chapter 13 plan dated November 8, 2017 [Dkt. No. 29] (the "Modified Plan"), that removed the priority modification but lowered the set payment to a secured creditor for an initial period under the Modified Plan. Such lowered payments appear in some cases to be no more than minimal, adequate protection payments. Plans such as these, so-called "step plans" are proposed to allow counsel accelerated payments at the expense of the affected secured creditors, and only thereafter step up the set payment to secured creditors to a more fulsome amount.

In all the cases underlying the Applications but one,[2] a plan was at some point proposed that contained either or both a priority modification or a step.

---

[1]     The Model Plan was made effective through this court's General Order No. 08-04.

[2]     In one case, *In re Jennifer Baggett*, Case No. 17bk23650, the court can find no plan containing any of the provisions discussed below. That case was dismissed on other grounds on February 1, 2018. As a result, the Application in the case is moot per the court's normal procedures for compensation heard after dismissal.

As discussed in further detail below, the net effect of such additions is not immediately obvious and is beyond the scope of this Memorandum Decision.[3] There is no question, however, that the additions are asserted for the benefit of the attorneys alone, not the debtors in whose plans they are contained, and are, therefore, an act of self-dealing. Regarding the compensation related to such plan modifications, Semrad alone has over 50 cases under advisement, another 25 where compensation requests have been deferred pending a resolution of the matters under advisement[4] and countless others which have not yet come on for consideration. In all of these cases where compensation is under advisement or where compensation is deferred for later consideration, the Chapter 13 Trustee has objected to compensation on the grounds discussed below.[5]

In its objection, the Chapter 13 Trustee raises two issues. First, the Chapter 13 Trustee challenges Semrad's right to compensation given the self-dealing that has allegedly occurred. Second, the Chapter 13 Trustee argues that Semrad did not adequately disclose its agreements with affected debtors regarding the plan modification.

On January 11, 2018, after the parties concluded initial briefing on the matter, the court conducted a combined hearing (the "Hearing") on the Chapter 13 Trustee's objection to compensation in both Semrad's and Geraci's cases. Because counsel for Semrad and Geraci expressed some surprise at the court's focus on the disclosure aspects of the Chapter 13 Trustee's objection, both Semrad and Geraci were allowed the opportunity to further address that narrow

---

[3]     Early in the hearings on these matters, the reservations voiced by the Chapter 13 Trustee were made to the plan provisions themselves, not to compensation of counsel. At that time, the court noted that certain such provisions can, under the right circumstances, be permitted if agreed to by the creditors whose treatment under a plan are affected by the change in priority. Perhaps as a result, when the court set a deadline for the Chapter 13 Trustee to object, the Chapter 13 Trustee chose to object to counsel's compensation and not to the plan revisions themselves. As a result, the question of whether the affected plans are or are not confirmable based on these revisions is not before the court today. Whether it be the potential modification of a secured creditor's unmodifiable rights under section 1322(b)(2), or the potential violation of section 1325(a)(5)(B)(iii)(II) in giving creditors other than equal monthly payments via a step plan, or the question of what constitutes the consent required to modify other rights, the propriety of these provisions in a chapter 13 plan for purposes of plan confirmation requirements remains to be seen. What is true is that, as discussed below, all of these provisions share one thing in common—prioritizing payments to the debtor's attorney with no benefit to the debtors themselves.

[4]     For a time after this issue was taken under advisement, Semrad requested that, in new cases where the same actions occurred and where the Chapter 13 Trustee had objected to compensation, the respective compensation application be added to the matters under advisement. More recently, Semrad has asked to continue such new requests for later hearing, pending this determination. As a result, the Applications consist only of those cases where compensation has been taken under advisement at the conclusion of the Hearing (defined *infra*) and those which, after the Hearing, Semrad has expressly asked to be added to this court's consideration of the matter. Further, as will be shown to be important later herein and is consistent with the court's policy of not ruling on compensation until confirmation is ripe, the court has taken compensation under advisement only in those cases where the debtor's plan was otherwise ready for confirmation.

[5]     Semrad is not alone in seeking such changes. Concurrently with the briefing and determination of this matter, the court has considered and determined a matter related to Geraci Law L.L.C. ("Geraci"). A separate order determining the Geraci matter will be issued concurrently herewith. Further requests from other law firms that appear to have followed the practice in these cases are in the process of being considered.

issue after the Hearing in further briefing, and the Chapter 13 Trustee was permitted a sur-reply.
The last of those filings was submitted on January 30, 2018 and the matter is now fully briefed and
under advisement. This Memorandum Decision concludes this and all of the other Semrad and
Geraci matters under advisement with respect to the Applications, except as expressly continued
herein.

A.    Chapter 13 Compensation Generally

As noted above, the Chapter 13 Trustee challenges Semrad's compliance with the disclosure
requirements applicable to counsel in bankruptcy matters. Semrad, it argues, must have entered into
agreements with the debtors regarding the plan modifications. Such an agreement, the Chapter 13
Trustee argues, must be in writing and disclosed to the court under the Local Rules for the United
States Bankruptcy Court of the Northern District of Illinois (the "Local Rules").

"Section 327(a) of the Bankruptcy Code allows bankruptcy trustees to hire attorneys,
accountants, and other professionals to assist them in carrying out their statutory duties. 11 U.S.C.
§ 327(a). Another provision, § 330(a)(1), states that a bankruptcy court 'may award ... reasonable
compensation for actual, necessary services rendered by' those professionals." *Baker Botts L.L.P. v.
ASARCO LLC*, — U.S. —, 135 S. Ct. 2158, 2162 (2015). With respect to priority of such
compensation, however, "[i]n bankruptcy, law firms that represent the estate (or the trustee) can be
compensated ahead of other creditors, but only if they receive the court's approval for their hiring
and demonstrate that their activities are necessary and benefit the estate." *Fed. Trade Comm'n v.
Trudeau*, 845 F.3d 272, 274-75 (7th Cir. 2016) (*citing to* 11 U.S.C. §§ 327 & 330; *ASARCO*, 135 S. Ct.
at 2158).

In order for such a professional to receive compensation, it must comply with the
requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules") and the Local Rules. It is generally accepted that those requirements do *not* include
obtaining orders of retention in chapter 13 matters, under the theory that section 327(a) applies to
trustees alone. As there is in chapter 13 no provision equivalent to section 1107 whereby a debtor in
chapter 11 must comply with the duties of a trustee generally, it follows that chapter 13 debtors need
not retain their own counsel. *See, e.g., In re Maldonado*, 483 B.R. 326, 337 (Bankr. N.D. Ill. 2012)
(Schmetterer, J.) ("Section 327 does not apply in Chapter 13 cases."); *In re Jones*, 505 B.R. 229, 231
(Bankr. E.D. Wis. 2014) ("[A]n individual chapter 13 debtor ... is not a 'trustee' for purposes of
§ 327."). As a result, the disinterestedness standard set forth in section 327 appears inapplicable to
counsel in chapter 13 matters.[6] By the same token, it appears that section 328, which is reliant on
section 327 in its operation, also does not apply.

While no application for retention is therefore required for debtors' counsel in chapter 13
matters, applications for compensation must nonetheless be made. *See* 11 U.S.C. § 330(a)(4)(B). In
addition, whether or not compensation is being sought, all counsel representing debtors in cases

---

[6]    Congress has mandated that only a "disinterested" person may be employed by a bankruptcy estate.
11 U.S.C. § 327(a). Among other things, a disinterested person "does not have an interest materially adverse
to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or
indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C.
§ 101(14).

under the Bankruptcy Code must disclose the details of their compensation arrangements. *See, e.g.,* 11 U.S.C. § 329; Fed. R. Bankr. P. 2016; Bankr. N.D. Ill. R. 2016-1.

Section 329 requires that:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). Section 329 empowers the court to "cancel any such agreement, or order the return of any such payment, to the extent excessive ...." 11 U.S.C. § 329(b).

Bankruptcy Rule 2016 requires "[e]very attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code." Fed. R. Bankr. P. 2016(b) (the "2016 Statement").[7] Such attorneys have a continuing obligation to supplement the 2016 Statement "within 14 days after any payment or agreement not previously disclosed." *Id.*

Under Local Rule 2016-1, the court has clarified that "[e]very agreement between a debtor and an attorney for the debtor that pertains, directly or indirectly, to the compensation paid or given, or to be paid or given, to or for the benefit of the attorney must be in the form of a written document signed by the debtor and the attorney." Bankr. N.D. Ill. R. 2016-1. The Local Rule goes on to state that:

> Agreements subject to this rule include, but are not limited to, the Court-Approved Retention Agreement as posted on the court's website, other fee or expense agreements, wage assignments, and security agreements of all kinds. Each such agreement must be attached to the statement that must be filed under Fed. R. Bankr. P. 2016(b) in all bankruptcy cases. Any agreement entered into after the filing of the statement under Rule 2016(b) must be filed as a supplement to that statement within 14 days of the date the agreement is entered into.

*Id.*

Last, the court's applicable general order states in part that:

> IT IS ORDERED that every agreement between a debtor and an attorney for the debtor in a case under ANY CHAPTER of the Bankruptcy Code that pertains, directly or indirectly, to the compensation paid or given, or to be paid or given, to or for the benefit of the attorney must be in the form of a written

---

[7]    The requirement set forth in Bankruptcy Rule 2016 has, in one form or another, existed as part of the Bankruptcy Rules since their implementation in 1983.

document signed by the debtor and the attorney. Each such agreement must be attached to the statement that must be filed under Fed. R. Bank. P. 2016(b) in all bankruptcy cases.

Second Amended General Order 11-2 dated September 21, 2011 (the "General Order").

These requirements exist to allow the court to police generally the underlying conflict between the debtor and her counsel as a creditor in the debtor's bankruptcy. *See* H.R. Rep. No. 595, 95th Cong., 2d Sess., at § 329, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6285 (1978) ("Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny."). Further, the requirements exist to empower the court to ensure that all creditors, including counsel, receive equitable distributions.

The bankruptcy judge has a duty to challenge requested fees *sua sponte*. As stated in *Cohen & Thiros*, …"the bankruptcy court sits as a guardian of the funds available to creditors. It is not an abuse of discretion for the court to thoroughly examine fee petitions. Indeed, it could be an abuse of discretion to fail to challenge an insufficient petition: 'It is the [bankruptcy] court's independent obligation to give credit only where there are … supporting documents, even in cases where no interested parties raise objections to the claim.' " 44 B.R. at 574 (*quoting In re Meade Land Development Co.*, 527 F.2d 280, 284 (3d Cir. 1975)). … The need for independent judicial review underlies the established requirement that attorneys present detailed records of their "actual, necessary" services under Code section 330. … Clearly, the bankruptcy judge has the broadest discretion to review and question applications for compensation. Indeed, he has the inescapable statutory responsibility to do so.

*In re Wildman*, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987) (Schmetterer, J.).

It follows, therefore, that failure to abide by the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or the General Order may result in reduction or denial of compensation, even where the services performed are otherwise reasonable. "Fee disclosure obligations of debtor's counsel are mandatory, not permissive." *In re Varan*, Case No. 11 B 44072, 2014 WL 2881162, at *5 (Bankr. N.D. Ill. June 24, 2014) (Cassling, J.). In an instance of noncompliance, *Varan* stands for the proposition that the court might, under section 105 or otherwise, sanction counsel and require disgorgement for amounts already paid. *Id.* In *Varan*, disgorgement sanctions were awarded as the matter arose under chapter 7 and the counsel in question had already been paid. *Id.* at *13.

Disclosure failures are serious omissions. As the Seventh Circuit stated in the context of counsels' disclosure requirements under Bankruptcy Rule 2014, "counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998) (noting that absent such protections, the self-disclosure requirement would be to allow "the fox to guard the proverbial hen house"). It follows that failure to comply with the disclosure requirements in Bankruptcy Rule 2016, as set forth above, is no less important and may lead to the same result.

6

Of course, the court may also deny compensation to the extent it finds that the compensation sought is unreasonable or excessive. 11 U.S.C. § 330(a)(4)(B) (allowance of chapter 13 debtor's attorney's compensation should be "based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section"); 11 U.S.C. § 329(b); *In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998).

The burden of demonstrating that counsel and counsel's application meets the foregoing standards and merits compensation falls on the applicant. *Geraci*, 138 F.3d at 318 (chapter 13 applicant); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (Schmetterer, J.) ("The burden of proof to show entitlement to fees is, in all fee matters, always on the applicant.") (chapter 11 applicant); *cf. In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994) (same).

B.    Chapter 13 Compensation in this District

As noted above, chapter 13 presents an unusual circumstance regarding the retention and thereby the compensation of chapter 13 debtors' counsel. Nonetheless, the award of counsels' fees is still governed by section 330 of the Bankruptcy Code.

> In chapter 13 cases, fees are awarded to debtors' attorneys under 11 U.S.C.
> § 330(a). They are categorized as administrative expenses under Code § 330(a)(4)(B)
> and Code § 503(b)(2) and are entitled to priority under Code § 507(a)(1). *In re
> Randolph*, 2001 WL 1223139, at *8. The administrative expenses and charges of
> Code § 507(a)(1) are usually treated as priority claims entitled to full payment in
> deferred cash payments under Code § 1322(a)(2).

*In re Maldonado*, 483 B.R. 326, 337 (Bankr. N.D. Ill. 2012) (Schmetterer, J.).

As noted above, the treatment of such fees is, in part, governed by section 1322(a)(2), which requires deferred cash payments on such claims, unless the holder of the claim agrees otherwise. Section 1326(b)(1) states that such claims may be paid before or at the time of payment to creditors under the plan. 11 U.S.C. § 1326(b)(1).

Thus "[a] bankruptcy judge has discretion in setting the amount and timing of attorneys' fees payments, allowing fees to be made concurrently with payments to creditors, but requiring that the fees payment begin with the first payment to creditors." *Maldonado*, 483 B.R. at 337 (*citing to In re Pappas & Rose, P.C.*, 229 B.R. 815, 820 (W.D. Okla. 1998)).

This discretion has been the topic of litigation before the Seventh Circuit. *Geraci*, 138 F.3d at 318. In *Geraci*, the Seventh Circuit recognized, among other things, that it is well within the power of the bankruptcy courts to implement standards regarding compensation in consumer cases given the large number of consumer cases handled by a given bankruptcy judge. These include setting presumptively reasonable fees and procedures to document and substantiate said fees. *Id.* at 320-21. This discretion allows bankruptcy courts to save time and promote judicial efficiency in light of the large amount of consumer cases they have. *Id.* at 321 ("[I]t is not an abuse of discretion for the court to set a presumptively reasonable fee.").

The court has exercised that discretion in this jurisdiction by implementing the Court-Approved Retention Agreement (the "CARA") and related procedures. Bankr. N.D. Ill. R.

5082-2(A)(1); Local Form 23c. Under Local Rule 5082-2, attorneys in chapter 13 matters may elect to use the CARA as their engagement agreement with their clients. The CARA provides additional duties that counsel must fulfill in order to be eligible for consideration for the "Flat Fee," Bankr. N.D. Ill. R. 5082-2(A)(5) & C, which in this district is presently $4,000.00. For example, in addition to fulfilling their requirements under Local Rule 2016-1 and the General Order, counsel must discuss their compensation with their client. This ensures that whatever agreements are reached are entered into on a fully informed basis. Put in other terms, the CARA procedures of this court set a presumptively reasonable fee in chapter 13 matters, and place conditions on how that presumptively reasonable fee may be sought. *Geraci*, 138 F.3d at 321.

One of those conditions is compliance with the General Order discussed above, *see* Local Form 23-1 (the CARA application), and Local Rule 2016-1. *See* Bankr. N.D. Ill. R. 5082-2(B). Only after that compliance has occurred is counsel permitted to seek compensation of the Flat Fee.

Importantly, nothing in Local Rule 5082-2, the CARA, or otherwise entitles counsel to the Flat Fee even if the conditions are met. While the Local Rules may limit or bar compensation, they do not guarantee it.

Further, payment of counsel's compensation, whether it be the Flat Fee or otherwise, is not addressed. In this jurisdiction, that happens under the Model Plan, which includes payment of fees in Section E.4.[8] The Model Plan also specifies the priority of payment. Section F of the Model Plan states the following:

> The trustee shall pay the amounts specified in Section E of this Plan in the following order of priority, with claims in a given level of priority reduced proportionately in the event of insufficient plan payments: (1) the trustee's fee; (2) current mortgage payments; (3) secured claims listed in Section E, Paragraph 3.1; (4) priority claims of the debtor's attorney; (5) mortgage arrears; (6) priority claims other than those of the debtor's attorney; (7) specially classified non-priority unsecured claims; and (8) general unsecured claims.

As noted above, it is this priority that Semrad seeks to change in each case under advisement, setting its priority of payment equal to current mortgage payments. *See, e.g.*, Plan, at ¶ G(1). In light of that change, the Chapter 13 Trustee has objected to Semrad's compensation, arguing that work relating to the proposed plan modification is not of any perceived benefit to the estate and that Semrad did not adequately disclose its agreements with affected debtors regarding the plan modification.

---

[8]     As the parties are aware, for cases filed on or after December 1, 2017, Official Form 113 (the "National Plan") has replaced the Model Plan in this jurisdiction. That National Plan addresses attorneys' fees in section 4.3 thereof. Five of the cases included in the Applications have used the National Plan—*In re Synia Q. Johns*, Case No. 17bk36452, *In re Walter Johnson*, Case No. 17bk36940, *In re Kathleen Readus*, Case No. 17bk37243, *In re Ka'Dijah Tyler-Moreau*, Case No. 17bk37949, and *In re Latasha Brunson*, Case No. 17bk38292. Each of the current plans in these cases contain step payments to a secured creditor to increase the priority of payment of Semrad's compensation. In addition, the original plans in all but the *Tyler-Moreau* case contained a priority modification, implemented by completely overriding the priority system in the National Plan in favor of Semrad's priority. The altered priority in these plans appears to have the same net effect of those in under the Model Plan.

The court will now take up each issue in turn.

C.    Benefit to the Estate

The Chapter 13 Trustee argues that Semrad's efforts relating to the plan modifications are of no benefit to the estate. Section 330 of the Bankruptcy Code states, in pertinent part, that "the court shall not allow expenses for services that were not reasonably likely to benefit the debtor's estate." 11 U.S.C. § 330(a)(4)(A); *see also Trudeau*, 845 F.3d at 274-75 (*citing to* 11 U.S.C. §§ 327 & 330; *ASARCO*, 135 S. Ct. at 2158).

As noted above, there is no question that the revisions are asserted for the benefit of the attorneys alone, not the debtors in whose plans they are contained. Had this been a case under another chapter, Semrad would be in danger of disqualification. *See, e.g., Crivello*, 134 F.3d at 835 (a professional is not disinterested if it possesses an "interest or relationship that would even faintly color the independence and impartial attitude required by the Code." (*quoting In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d Cir. 1991)); *In re Pillowtex, Inc.*, 304 F.3d 246, 249 (3d Cir. 2002) (attorney's status as a creditor beyond that approved by the court, even if nebulous, made such counsel not disinterested). There is little doubt that counsel's attempt to change the *status quo* regarding its compensation colors its independence and impartiality.

The disinterestedness standard does not appear to apply in chapter 13 matters, however. Instead, the inquiry is one under section 330 regarding benefit to the debtor's estate. The Chapter 13 Trustee argues that the revisions are of no benefit, and thus the work relating to those revisions is not compensable. The Chapter 13 Trustee further argues that the revisions are harmful to debtors, by causing in some instances a slower rate of payment for secured creditors. This, the Chapter 13 Trustee argues, leaves debtors in a much more vulnerable position in the event of dismissal with very little benefit to the bankruptcy estate.

A more clearly demonstrable harm to debtors has been shown in two of the cases (the "Dismissed Cases").[9] In each of the Dismissed Cases, the respective debtor's plan was ready for confirmation prior to the Hearing, else its Application would not have been taken under advisement. However, the plans were held up over counsel's plan modification and the cases were subsequently dismissed for unreasonable delay before the plan was confirmed. The Chapter 13 Trustee's motions to dismiss in these cases included the failure to timely confirm a plan as reason for dismissal.

It might be argued that there were defaults in the Dismissed Cases that were independent from the delay caused by counsel, and in each of the motions to dismiss, other factors are cited. The unavoidable fact, however, is that the applicable law is less flexible with respect to preconfirmation defaults than it is with respect to postconfirmation ones.[10] These debtors would have been better off by having more bankruptcy remedies available to them in confirmed, defaulted plans than they were in unconfirmed, defaulted plans. The court is forced to conclude that Semrad's actions caused actual harm to the debtors in each of the Dismissed Cases.

_____

[9]    *In re Donica L. Ousley*, Case No. 17bk29894, and *In re Dorothy Smith*, Case No. 17bk30056.

[10]    For example, there is generally no mechanism to defer or waive a preconfirmation payment default.

Putting the Dismissed Cases aside for the moment, in all the cases and as detailed in this case above, Semrad has filed either a chapter 13 plan containing an alteration of the priority of creditors so as to prioritize Semrad's own payment or a chapter 13 plan lowering payments to secured creditors for a period of time to allow an accelerated payment to Semrad. By so prioritizing its own payment, payments to secured creditors suffer as a result. The risk of such a change is self-evident. Secured creditors, whose rights are superior to unsecured ones such as Semrad, remain due and owing longer and the debtors therefore remain subject to greater and longer exposure on their debts. The only party that would have benefited in such an instance is Semrad, with the debtor having been harmed.

Semrad argues that its actions do not harm debtors, but in fact help them. First, Semrad argues that when an affected creditor objects, it capitulates and removes the revisions in question. Second, Semrad argues that it only seeks these revisions in cases where its payment is at risk—cases where in an earlier case the debtors had failed to make their plan payments—and by ensuring a higher level of payment in such cases, Semrad is also ensuring that such at risk cases are given the legal representation they might otherwise fail to get. Neither one of these arguments is persuasive.

As to the first, in the context of retentions and compensation, it has never been a good argument that problems can be ignored based on the undertaking to act differently if pressed. As the Seventh Circuit stated, allowing counsel to regulate its own behavior is like allowing "the fox to guard the proverbial hen house." *Crivello*, 134 F.3d at 836; *see also Pillowtex*, 304 F.3d at 249 (agreeing to disgorge fees if later determined to be paid in preference did not immunize counsel from being disqualified as being not disinterested). Further, the mere existence of the provisions increases the risk to the affected debtors of delay, and delay, as noted above, is meaningful. This puts paid to Semrad's argument that it protected its clients' interests by withdrawing the self-serving provisions when faced with an objection solved the problems the provisions might create.[11]

Second, the benefit to the system argument propounded by Semrad has been rejected by the Supreme Court relatively recently. *ASARCO*, 135 S. Ct. at 2165-66. In *ASARCO*, the Supreme Court stated that "relying on such prognostications to interpret statutes" was problematic because such predictions are so vague. *Id.* at 2168. In light of that, the Supreme Court narrowly interpreted what is actual and necessary for the purposes of bankruptcy compensation to exclude self-serving actions of counsel.

In light of the foregoing, the court concludes that both the plan provisions themselves and any effort spent on the plan provisions by Semrad were of no benefit to the estates in question. While that does not definitively determine whether the requested fees are unreasonable, it calls into question such requests. The court will take up the remedies after having considered the allegation regarding Semrad's failure to disclose.

---

[11]     In fact, in the case at bar, Semrad later filed the Modified Plan, which did not include the priority modification but contained the step language described above. The filing of a plan to remove the problematic language, albeit priority modification or stepped payments to higher priority creditors, does not, however, resolve the issues noted herein. The filing of *any* chapter 13 plan that includes the provisions in question without further disclosure is problematic.

D.    Inadequate Disclosure

Counsel's surprise at the Hearing over the court's focus on the lack of disclosure is hard to understand, given the prominent placement of the allegation in the Chapter 13 Trustee's objection. It is even harder to understand given that the applicable requirements are very straightforward.

As previously provided, section 329 of the Bankruptcy Code requires counsel to file a statement of all compensation agreed to or paid within a year prior to the commencement of the bankruptcy in relation to representation in the bankruptcy case. 11 U.S.C. § 329(a). Bankruptcy Rule 2016 requires that this disclosure be filed and transmitted to the United States Trustee within 14 days of the order for relief, which in most cases is entered upon the filing of the bankruptcy petition. Fed. R. Bankr. P. 2016(b). The 2016 Statement filed thereunder must be supplemented "within 14 days after any payment or agreement not previously disclosed." *Id.*

Local Rule 2016-1 goes further, requiring *every* agreement between counsel and the debtor with respect to compensation agreed to or paid must be in writing, signed by both the debtor and counsel and attached to the 2016 Statement, regardless of whether such agreement was entered into before the case was filed or after. Bankr. N.D. Ill. R. 2016-1. These requirements are echoed in the General Order.

There is nothing ambiguous about the foregoing requirements. Further, there is no question that an agreement between a debtor and her attorney, whereunder the debtor consents to the attorney modifying the Model Plan to compensate itself at a higher priority than otherwise contained therein, would be an agreement pertaining to the attorney's compensation. Pursuant to Local Rule 2016-1, such an agreement *must* be in writing, *must* be signed by the debtor and the attorney and *must* be filed with the court. Bankr. N.D. Ill. R. 2016-1.

Semrad first argues that as it had no such agreement, there was nothing to file. That seems to be partially rooted in a belief that if there is nothing in writing, there is no agreement. Basic contract law teaches otherwise. "An enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract." *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991); *see also Dillard v. Starcon Intern., Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (clarifying that state law governs such issues). An "oral agreement is binding where there is an offer, an acceptance, and a meeting of the minds as to the terms of the agreement." *Szfranksi v. Dunston*, 34 N.E.3d 1132, 1148 (Ill. App. Ct. 2015).

True, basic contract law also teaches us that the Statute of Frauds might require a writing for enforcement. *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1351 (Ill. 1997). But that simply stands for the proposition that factors can require certain agreements to be in writing. That is just what Local Rule 2016-1 does.

Semrad's argument treads a dangerous path. Semrad has filed a plan on the debtor's behalf containing the priority plan modification. How could it have done so except by agreement with the debtor? If Semrad has been filing such plans in the absence of agreement by the applicable debtors, it has greater issues than those addressed herein.

Semrad cannot avoid this obligation by way of its "Chapter 13 Disclaimers," which provide disclosure to debtors of how Semrad will be paid under bankruptcy plans generally.[12] Nothing contained therein specifically addresses the revisions Semrad has subsequently sought in these cases.

Semrad also argues that it cannot be reasonably required to agree separately with debtors regarding the contents of the Bankruptcy Code. Just so. The Bankruptcy Code, Bankruptcy Rules, Local Rules and General Order set the stage for this entire inquiry. When Semrad changes its treatment in the Model Plan, it alters the baseline that those collectively establish. By altering that baseline, Semrad has unquestionably changed the *status quo* regarding its payment. It is that change that must be disclosed.

Semrad further argues that entering into such an agreement would be prohibited by the CARA. That argument does not save the day. If it did, Semrad would be disqualified from seeking the Flat Fee. But it does not. The CARA only prohibits agreements contrary to the CARA and, as established previously, the CARA does not address the method or priority by which counsel are paid. Semrad concedes as much in its sur-reply. Additional agreements, therefore, regarding this method and priority of payment are not prohibited by the CARA. Bankr. N.D. Ill. R. 5082-2(C)(3)(b) (only agreements which conflict with the CARA are prohibited). Nor is does the duty to discuss compensation with clients set forth in the CARA supplant the express duties in Local Rule 2016-1 and the General Order. The CARA procedures themselves make clear that compliance with Local Rule 2016-1 and the General Order are preconditions to eligibility.

Finally, Semrad represents that a plan with such modification can by itself act as a sufficient disclosure and is the only agreement that governs the manner in which Semrad's fees are to be paid. Semrad's reliance on the chapter 13 plan as an agreement filed in compliance with Local Rule 2016-1 and the General Order is misplaced. At the most granular level, the chapter 13 plan does not comply with Local Rule 2016-1 or the General Order as it is not signed by the debtor. But more to the point, even if it were signed by the debtor, it is not enough for representations to be made through the plan or in other acknowledgment forms for there to be adequate disclosure. Disclosure must be made pursuant to the requirements set out in Local Rule 2016-1 and the General Order.

Under these rules, "an attorney must 'lay bare all [his] dealings' with the debtor concerning compensation." *In re Jackson*, 401 B.R. 333, 340 (Bankr. N.D. Ill. 2009) (Goldgar, J.) (*quoting In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991)). "The disclosures he makes must be 'precise and complete.'" *Id.* at 340 (*quoting In re Berg*, 356 B.R. 378, 381 (Bankr. E.D. Pa. 2006)). "'Coy or incomplete disclosures' that force the court 'to ferret out pertinent information' will not do." *Id.* (*quoting Saturley*, 131 B.R. at 517).

It is not the court's job to search the docket for these representations. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 754 F. Supp. 2d

---

[12]    The Chapter 13 Disclaimers is a form that Semrad employs and acts as an acknowledgement by a debtor that Semrad has complied with the obligations under the CARA. While the debtor initials the form, it is unclear whether Semrad's attorneys do as well. Even if this form of glove box disclaimer satisfied the Local Rule requirement of an agreement in writing (it does not), it is undisputed that this document was not filed with the court under Local Rule 2016-1.

984, 985 (N.D. Ill. 2010) (*citing DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)); *see also Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 508 (N.D. Ill. 2011) (summarizing the foregoing). This is all the more meaningful in the context of examining a debtor's interactions with its counsel. *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 849 (BAP 10th Cir. 1997); *see also Crivello*, 134 F.3d at 836 (foxes and hen houses).

As the court stated during the Hearing, one purpose of these disclosure requirements is to have all of the documents relating to compensation in one place to be reviewed. The Seventh Circuit has expressly approved of having such requirements, especially in light of the high volume of cases that the bankruptcy court handles. *Geraci*, 138 F.3d at 320-21.[13]

What is clear is that Semrad has failed in its disclosure obligations to the court and has done so on a massive scale. Semrad determined that it wanted its compensation priority changed in these cases and did so without any further disclosure to the court than filing a myriad of plans containing the change. Given the volume of cases this court must handle, had the Chapter 13 Trustee not objected, it is possible that these changes may have gone unnoticed for quite some time.

Semrad's actions sound in the classic "it is better to ask for forgiveness than permission" scenario. That phrase, though it may be common banter in business, is almost never a valid approach in a court of law. *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 681 (7th Cir. 2017) ("[T]here is no reason why counsel for Mobil could not have asked the court for permission ... . [I]t appears that Mobil's counsel was either hoping that its investigation would not be discovered or banking on the possibility that it could ask for forgiveness later rather than be denied permission up front. We do not condone such behavior and would encourage, as the district court proposed, that such a practice be evaluated by the court's rules committee or chief judge."); *Magallanes v. Colvin*, Case No. 14-1217-EFM, 2016 WL 4733862, at *2 (D. Kan. Sept. 12, 2016) ("The old adage that 'it is better to ask for forgiveness than permission' does not apply in federal court."); *McCann v. Cullinan*, Case No. 11 CV 50125, 2015 WL 4254226, at *2 (N.D. Ill. July 14, 2015) ("The old adage that it is better to beg for forgiveness than to plead for permission was rejected by the Federal Rules of Civil Procedure."). This is especially the case in the realm of required disclosures.

One clear reason that is so is that failure to disclose is not necessarily curable. As Judge Cassling stated,

> Timely disclosure of the fee statement is mandatory and central to the integrity of the bankruptcy process: "a belated disclosure is insufficient to cure the failure to timely disclose fees received." *In re Valladares*, 415 B.R. 617, 623 (Bankr. S.D. Fla. 2009). "If every attorney waited until he or she is caught to file a statement of disclosure, the entire concept of mandatory disclosure would become a farce." *Id.*

*Varan*, 2014 WL 2881162, at *12.

---

[13]    In 2017, for example, the bankruptcy judges for the Northern District of Illinois collectively heard an average of 1,700 new motions a month, and including continuances, had nearly 240,000 matters scheduled for hearing. The undersigned heard over 30,000 of those matters. The vast majority of these hearings occur in chapter 13 cases, generally in weekly motion calls where matters scheduled vary from as little as 300 to as many as 800 or more.

By failing to file the required disclosures, Semrad has failed to fully apprise the court of the changes it has made to the balance struck in this jurisdiction between debtors and their counsel. As a result, the court considers the potential remedies.

E.    Remedies

It is within the court's discretion and fundamental to the bankruptcy process for the court to determine if and to what extent compensation is due to counsel as it affects the bankruptcy estate.

To begin and as discussed above, Semrad has disqualified itself from seeking the Flat Fee as it has not complied with Local Rule 2016-1 and the General Order. *See* Bankr. N.D. Ill. R. 5082-2(B)(2) (requiring counsel to certify its compliance with Local Rule 2016-1 in order to apply for the Flat Fee); Local Form 23c (requiring counsel to comply with the General Order).[14] Because it failed to properly disclose its agreements with the debtors regarding its compensation, Semrad must reapply in an itemized form. In doing so, it cannot seek more than it is contractually entitled to under its CARA with each debtor in the absence of itemization. Except as noted below, only upon such reapplication can the court make a full determination of reasonableness.

The violation of the disclosure rules also merits an independent sanction. The court must determine whether the incomplete disclosures should result in denial or reduction of compensation, *see In re Kowalski*, 402 B.R. 843, 850 (Bankr. N.D. Ill. 2009) (Squires, J.); *see also In re Andreas*, 373 B.R. 864, 872-73 (Bankr. N.D. Ill. 2007) (Squires, J.), or whether some or all of Semrad's compensation should be denied as unnecessary or unreasonable. *In re Wiredyne, Inc.*, 3 F.3d 1125, 1128 (7th Cir. 1993) ("The decision to reduce fees under section 329 is within the sound discretion of the bankruptcy court, which should weigh the equities of the case in determining whether the fees are unreasonable or excessive.").

In instances where counsel have violated the rules of retention or disclosure, courts have taken it upon themselves to reduce fees in proportion to the harm caused by the transgression. *In re Chapman*, 323 B.R. 470, 479 (Bankr. W.D. Wis. 2005); *see also In re Ryan*, 517 B.R. 905, 908 (Bankr. E.D. Wis. 2014). Here, the court concludes that Semrad's failure to disclose, while not *de minimus*, was not egregious enough to warrant denial of fees in their entirety. Nonetheless, the failure to disclose cannot go without recourse, as it strikes to the very heart of the court's role in overseeing these relationships. Considering the amounts in question and the nature of the disclosure, the court concludes that a $500.00 per Application reduction is "necessary to indicate the severity of the transgression and to deter similar conduct in the future." *Chapman*, 323 B.R. at 479. Thus, when and if (see below) Semrad reapplies in an itemized form, the total it may seek will be limited to its contractual limitations set forth in the CARA in the absence of itemization, less $500.00.

That brings the court to reasonableness.

---

[14]    This determination is not a determination that Semrad violated the CARA, only the rules regarding pursuit of the Flat Fee. Compliance with the CARA itself is not before the court. Even where the CARA itself is complied with, however, the rules regarding the Flat Fee and the disclosure rules generally apply. Further, even where those are complied with, the court may nonetheless decline to award the Flat Fee. Several judges in this District routinely reduce the Flat Fee when cases are dismissed in their nascent stages. The determination of reasonableness is always before the court. *Wildman*, 72 B.R. at 705.

With respect to the reasonableness of the requests, the court first concludes that with respect to the Dismissed Cases, Semrad's fee must be denied in its entirety. While the court routinely denies or moots fee applications after dismissal in chapter 13 matters as no bankruptcy or other purpose is served by entertaining them, *see supra* n.2, doing so on those independent grounds here would have the potential of Semrad not receiving the clear message being sent herein as to the severity of its actions in relation to the affected debtors. There is no situation that the court can see where a counsel whose self-dealing causes direct, quantifiable harm, no matter how small, to his or her client could have its fees deemed reasonable and beneficial. The court therefore will disallow the Applications in the Dismissed Cases and order the disgorgement of any amounts received by Semrad in excess of the filing fee of each respective case, if paid by the debtor to Semrad. *In re Kisseberth*, 273 F.3d 714, 718-19 (6th Cir. 2001) (a court may utilize its authority under section 329 to order disgorgement); *see Kowalski*, 402 B.R. at 849. For such matters, Semrad may not reapply—both because the cases are dismissed and because the denial of their fees will be with prejudice.

A determination of reasonableness in the remaining cases must wait for Semrad's reapplication. However, as such reapplication presents a significant additional burden on the court, the court affords Semrad a choice in the manner authorized under *Geraci*: Semrad may either reapply in itemized form (seeking only the amount it is contractually entitled to minus the $500.00 set forth above, as described above) and await the court's later determination of what, within that reduced amount, is reasonable, or it may accept a further $1,000.00 per Application reduction and not reapply. Such a reduction will bring the Applications in line with the presumed reasonableness contemplated by *Geraci* and the Flat Fee in light of the self-dealing that has occurred, without the need for an already over-worked court to rehear Semrad's Applications.

What remains is how to close the gap in disclosure Semrad has created in these cases and in like matters going forward. In any matter before the undersigned where Semrad seeks compensation from the court and where Semrad seeks or has sought to alter the Model Plan's or National Plan's treatment of its compensation for its benefit so that Semrad may be paid more expeditiously (including the Applications herein), Semrad must as a predicate to the allowance of that application enter into a clear and concise written agreement with the debtor regarding the change in compensation Semrad seeks to include for its own benefit in the debtor's plan, including its risks and lack of benefit to the debtor (the "Priority Agreement"). The Priority Agreement must be approved by the court, physically signed by both the debtor and an attorney for Semrad and filed with the court either as part of its initial 2016 Statement or, if the case is presently pending as of the date hereof (including the Applications herein), as a supplement to the 2016 Statement. Any unapproved alteration in the Priority Agreement once approved by the court will render Semrad's fees unreasonable and unnecessary and result in denial of compensation in its entirety in the subject case.

As Semrad now has clear notice of where it erred, should it make no change, the court will deny Semrad's applications in their entirety in these type of matters.

On future matters, doing the foregoing will solve the failure to disclose issues, but not necessarily the reasonableness concerns. As to reasonableness, on such matters, once it has complied with the foregoing Priority Agreement requirement and its disclosure requirements to the court, Semrad may seek either the Flat Fee or itemized compensation in the manner set forth in the Local Rules. In either case, the court will, on a case-by-case basis and in accordance with the

standards set forth herein, determine the reasonableness of Semrad's compensation and any resulting reduction in light of the facts of the case where the self-dealing has occurred.

## CONCLUSION

It is therefore the court's conclusion that the Applications should and, by orders in the form set forth on Exhibits B, C and D entered concurrently herewith in the respective cases where an Application is pending, will be DENIED in part and set for further hearing.

Dated: March 28, 2018

Timothy A. Barnes
United States Bankruptcy Judge

EXHIBIT A
Applications

Dismissed Cases—Using Order from Exhibit B
17bk29894      In re Donica L Ousley
17bk30056      In re Dorothy A Smith

Mooted Case—Using Order from Exhibit C
17bk23650      In re Jennfer Baggett

All Other Cases—Using Order from Exhibit D
17bk22740      In re Tushun M Robinson
17bk22981      In re Khalali Johnson
17bk23495      In re Lotoya Wright
17bk24917      In re Ricky O Oscar
17bk25095      In re Lekesha Boyd
17bk25571      In re Ratonya Davis
17bk26747      In re Stephanie Franklin
17bk27098      In re Shenna Watkins
17bk27314      In re Natasha Williams
17bk27321      In re Renee Miller
17bk27335      In re John L Vereen
17bk27623      In re Jamaal Lee
17bk27645      In re James W Bell
17bk27761      In re Kubelium Hodges
17bk27772      In re Tyre Shambee
17bk28556      In re Alsheanda Stovall
17bk28808      In re Candice L Kelley-Granville
17bk28897      In re Jackie Anderson and Jamall R Anderson
17bk28991      In re Veronica E Watts
17bk29326      In re Tilton Walker
17bk29384      In re Jasmine S Lowery
17bk29675      In re Rhonda Washington
17bk29697      In re Hosea McGee
17bk29713      In re Janae N Rogers
17bk29827      In re Dwight K Hutson
17bk30773      In re Andrew Lopez
17bk30860      In re Terri Davis
17bk30927      In re Jeffrey Hunter
17bk31038      In re Lauren Mackey
17bk31255      In re Contessa Green
17bk31474      In re Natasha Johnson
17bk31569      In re Kevon X Rivers
17bk31578      In re Brenda Jordan
17bk31724      In re Kirsten Edwards
17bk31744      In re Mary L Christmas
17bk31945      In re Lakeshia Reynolds
17bk33175      In re Aysha Kines

| 17bk33728 | In re Errol Christmas |
| 17bk34423 | In re Carl Floyd |
| 17bk34787 | In re Salina Ashford |
| 17bk34800 | In re Yolanda Moore |
| 17bk35060 | In re Cheryl M Pheal |
| 17bk36452 | In re Synia Q Johns |
| 17bk36940 | In re Walter Johnson |
| 17bk37243 | In re Kathleen Readus |
| 17bk37949 | In re Ka'Dijah Tyler-Moreau |
| 17bk38292 | In re Latasha Brunson |

<u>EXHIBIT B</u>

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17bkxxxx |
| | ) | |
| TO BE ENTERED IN DISMISSED CASES, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

<u>ORDER</u>

The matter arises out numerous applications for compensation in chapter 13 cases brought by The Semrad Law Firm, LLC ("<u>Semrad</u>"). In the above-captioned chapter 13 case, the application is the Attorney's Application for Chapter 13 Compensation Under the Court-Approved Retention Agreement [Dkt. No. ___] (the "<u>Application</u>"); the court having jurisdiction over the subject matter and the parties having appeared at the hearing on January 11, 2018; the court having considered the Application, the relevant filings and the arguments presented by the parties; and the court having issued a Memorandum Decision concurrently herewith in *In re Talecia Gilliam*, Case No. 17bk19368 (the "<u>Memorandum Decision</u>");

NOW, THEREFORE, IT IS HEREBY ORDERED:

For the reasons set forth in detail in the Memorandum Decision, the Application is DENIED and set for further hearing as follows:

Semrad is denied compensation and shall disgorge any payments received in excess of reimbursement for the filing fee, if paid. No later than April 5, 2018, Semrad shall file with the court in this case confirmation that the reimbursement ordered herein has been made.

The Application is continued to April 12, 2018 at 11:00 a.m. Semrad shall appear at that date and time to confirm compliance with this Order.

Dated: March ___, 2018                    ENTERED:


_____
Timothy A. Barnes
United States Bankruptcy Judge

EXHIBIT C

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 17bk23650 |
|  | ) |  |
| Jennifer Baggett, | ) | Chapter 13 |
|  | ) |  |
| Debtor. | ) | Judge Timothy A. Barnes |
|  | ) |  |

ORDER

      The matter arises out numerous applications for compensation in chapter 13 cases brought by The Semrad Law Firm, LLC ("Semrad").  In the above-captioned chapter 13 case, the application is the Attorney's Application for Chapter 13 Compensation Under the Court-Approved Retention Agreement [Dkt. No. 11] (the "Application"); the court having jurisdiction over the subject matter and the parties having appeared at the hearing on January 11, 2018; the court having considered the Application, the relevant filings and the arguments presented by the parties; and the court having issued a Memorandum Decision concurrently herewith in *In re Talecia Gilliam*, Case No. 17bk19368 (the "Memorandum Decision");

      NOW, THEREFORE, IT IS HEREBY ORDERED:

      For the reasons set forth in detail in the Memorandum Decision, the Application is MOOT.

Dated: March ___, 2018        ENTERED:

                              _____
                              Timothy A. Barnes
                              United States Bankruptcy Judge

<u>EXHIBIT D</u>

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17bkxxxx |
| | ) | |
| ALL OTHER CASES, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

<u>ORDER</u>

The matter arises out numerous applications for compensation in chapter 13 cases brought by The Semrad Law Firm, LLC ("<u>Semrad</u>"). In the above-captioned chapter 13 case, the application is the Attorney's Application for Chapter 13 Compensation Under the Court-Approved Retention Agreement [Dkt. No. __] (the "<u>Application</u>"); the court having jurisdiction over the subject matter and the parties having appeared at the hearing on January 11, 2018; the court having considered the Application, the relevant filings and the arguments presented by the parties; and the court having issued a Memorandum Decision concurrently herewith in *In re Talecia Gilliam*, Case No. 17bk19368 (the "<u>Memorandum Decision</u>");

NOW, THEREFORE, IT IS HEREBY ORDERED:

For the reasons set forth in detail in the Memorandum Decision, the Application is DENIED in part and continued as follows:

(1) Semrad's compensation is reduced by $500.00.

(2) Semrad may either:

    a. Stand on the existing Application as reduced by the $500.00 above, but accept a further $1,000.00 reduction so as to bring the Application within the range of reasonableness presumed by the court in light of Semrad's self-dealing; or

    b. Reapply in itemized form, seeking no more than the amount it is contractually entitled to under the Court-Approved Retention Agreement in the absence of itemization, less the $500.00 reduction set forth in (1) above.

(3) The Application is continued to April 12, 2018 at 11:00 a.m. Semrad shall appear at that date and time state its election under paragraph (2) above, which may only be taken in all or none of the applicable cases.

(4) At the April 12, 2018 hearing, Semrad shall present to the court a draft Priority Agreement (as defined in the Memorandum Decision). The draft Priority Agreement shall be delivered

to the court via its "draft order to follow" email three business days in advance of the hearing, with a copy also delivered to the Chapter 13 Trustee at that time.

(5) Once that Priority Agreement is approved by the court, physically signed by the debtor and Semrad and filed with the court in accordance with Federal Rule of Bankruptcy Procedure 2016, the court will make a final determination of the compensation allowed hereunder.

Dated: March __, 2018                    ENTERED:


                                         _____
                                         Timothy A. Barnes
                                         United States Bankruptcy Judge

2